IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Michael Barnes, on behalf of himself and all others similarly situated, | : : : | |
| Plaintiff, | : : | CIVIL ACTION No. 24-757 |
| v. | : : | |
| Resources for Human Development, Inc., Defendant. | : : : | |

October 24, 2024                                                                 Anita B. Brody, J.

**MEMORANDUM**

Michael Barnes brings a collective and class action on behalf of himself and other employees of Resources for Human Development, Inc. ("RHD"). He alleges that he and other RHD employees were not properly paid for work during their 24-hour shifts in violation of the Fair Labor Standards Act ("FLSA") and the Pennsylvania Minimum Wage Act ("PMWA"). RHD moves to dismiss Barnes' Complaint. For the following reasons, the Court will deny RHD's Motion to Dismiss.

**I.     BACKGROUND**

RHD is a nonprofit corporation that provides in-home health care for patients in need of full-time care. Compl. ¶ 2, ECF No. 1.[1] RHD's employees ("providers") are

---

[1] For the purposes of this opinion, the Court accepts the allegations in the complaint as true. *See Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023).

1

responsible for administering medication, caring for patients, driving patients, cleaning, and other services. *Id.* ¶ 6. Patients contract with and pay RHD to send providers to their homes, while RHD contracts with and pays providers to care for patients. *Id.* ¶¶ 3-9.

RHD typically schedules providers for three or four twenty-four-hour shifts per week. *Id.* ¶ 35. During a twenty-four-hour shift, a provider works from 6:00 AM until 11:00 PM, but is not permitted to leave the patient's home until the next provider arrives at 6:00 AM the next morning. *Id.* ¶¶ 10, 11. The provider is paid for the seventeen hours worked from 6:00 AM to 11:00 PM, but not for the seven hours spent in the patient's home from 11:00 PM to 6:00 AM ("sleep time") because the provider is assumed to be sleeping. *Id.* ¶ 16. RHD automatically deducts sleep time from providers' compensated hours per the terms of its employment contract. *Id.* ¶ 36.

Sometimes, however, providers spend their sleep time caring for patients. *Id.* ¶¶ 14, 19, 36. Although RHD gives providers a phone application to record hours worked, the application does not allow providers to record hours worked during sleep time. *Id.* ¶ 21. As a result, providers are not paid for this time spent working.

On February 21, 2024, Barnes (a provider) filed a collective and class action Complaint, seeking damages on behalf of himself and his putative collective/class members for RHD's alleged failure to pay sleep time interruption wages. On May 13, 2024, RHD moved to dismiss Barnes' Complaint for failure to state a claim. Def.'s Mot. to Dismiss, ECF No. 9. RHD makes four arguments in support of its Motion: (1) Barnes fails to allege that RHD and providers are "engaged in commerce" so as to trigger the

application of the FLSA; (2) Barnes fails to state a FLSA or PMWA claim because its automatic sleep time deduction is permissible under both statutes; (3) Barnes' claims amount to "gap time" claims that are not cognizable under the FLSA or the PMWA; and (4) Barnes' proposed class and collective definitions are overly broad. *See generally* Def.'s Br. in Supp. of Mot. to Dismiss ("Def.'s Br."), ECF No. 9-1.

## II. LEGAL STANDARD

When addressing a motion to dismiss, the Court "accept[s] the factual allegations in the complaint as true, draw[s] all reasonable inferences in favor of the plaintiff, and assess[es] whether the complaint and the exhibits attached to it contain enough facts to state a claim to relief that is plausible on its face[.]" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023). The complaint must contain "sufficient factual matter" to show that a claim is plausible. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court is "not compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (internal quotation marks and citations omitted).

## III. DISCUSSION

### A. **The FLSA applies to Barnes' claims.**

RHD argues that Barnes' claims fall outside the ambit of the FLSA. For the reasons outlined below, the Court disagrees, and will therefore deny RHD's Motion on this ground.

"Congress enacted the FLSA to protect covered workers from substandard wages

and oppressive working hours." *Friedrich v. U.S. Computer Servs.*, 974 F.2d 409, 412 (3d Cir. 1992) (internal citation omitted). Under the FLSA's maximum hours provisions, an employee who "is engaged in commerce or the production of goods for commerce, or is employed in an enterprise engaged in the production of goods for commerce" and who works more than 40 hours a week must be paid at an overtime rate. 29 U.S.C. § 207(a)(1).

In 1974, Congress extended the FLSA's maximum hours protections to certain subsets of employees engaged in "domestic service." *See* Fair Labor Standards Amendments of 1974 (1974 Amendments), §§ 7(b)(2), 88 Stat. 62 (adding 29 U.S.C. § 207(l), which extends overtime protections to domestic service employees); *see also id.* § 7(a) (adding "the employment of persons in domestic service in households affects commerce" at 29 U.S.C. § 207(a)(1)). At the same time, Congress expressly exempted certain employees from the FLSA's maximum hours protections, including "employee[s] employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)." *Id.* § 7(b)(3) (adding 28 U.S.C. § 213(a)(15)).

In amending the FLSA, Congress did not define the terms "domestic service," "domestic service employment," or "companionship services"; instead, Congress empowered the Secretary of Labor to do so. *See* 1974 Amendments, § 29(b), 88 Stat. 76 (authorizing the Secretary of Labor "to prescribe necessary rules, regulations, and orders

4

with regard to the [1974 Amendments]"). Congress also empowered the Secretary to "define[] and delimit[]" the scope of the workers exempted under 28 U.S.C. § 213(a)(15). The Secretary did so by issuing final regulations at 29 C.F.R. §§ 552.3, 552.6, and 552.109.[2] Section 552.3 defines the term "domestic service employment" as "services of a household nature performed by an employee in or about a private home (permanent or temporary)," including services "performed by employees such as companions, . . . home health aides, [and] personal care aides[.]" 29 C.F.R. § 552.3. Section 552.6 explains that the term "companionship services" (as used in 28 U.S.C. § 213(a)(5)) means "the provision

---

[2] Since 1984, *Chevron* "required courts to defer to 'permissible' agency interpretations of the statutes those agencies administer." *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2254 (2024) (discussing *Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 104 S. Ct. 2278 (1984)). As of June 28, 2024—when the Supreme Court decided *Loper Bright* and overruled *Chevron*—courts "need not . . . and may not" defer to agency interpretations of ambiguous statutes. *Loper Bright*, 144 S. Ct. at 2273. The Court acknowledges that *Loper Bright* may change the analytical framework in certain cases involving agency regulations, but finds it has no such impact here.

Although *Chevron* is no longer, *Loper Bright* makes clear that "when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it." *Id.* In this case, both the 1974 Amendments and Section 213(a)(15) of the FLSA unambiguously delegate authority to the Secretary of Labor to prescribe necessary rules and regulations regarding the terms "domestic service," "domestic service employment," and "companionship services." *See* 1974 Amendments, § 29(b), 88 Stat. 76 *and* 28 U.S.C. § 213(a)(15); *see also Loper Bright*, 144 S. Ct. at 2263 n.5 (citing 28 U.S.C. § 213(a)(15) as an example of a statute that "expressly delegates to an agency the authority to give meaning to a particular statutory term") (cleaned up). The Court finds no reason to conclude that this delegation is unconstitutional and thus need not address the level of deference to be given to these regulations. *See Su v. WiCare Home Agency, LLC*, 2024 WL 3598826, *15 n.12 (July 31, 2024) (concluding that the FLSA's "delegation of statutory authority to the Secretary of Labor is clear"); *see also Gundy v. United States*, 588 U.S. 128, 135 (2019) (holding that a delegation of authority to an agency is constitutional so long as "Congress 'lay[s] down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform'") (citation omitted).

5

of fellowship and protection for an elderly person or person with an illness, injury, or disability who requires assistance in caring for himself or herself." 29 C.F.R. § 552.6(a). Importantly, Section 552.109(a) provides that "[t]hird party employers of employees engaged in companionship services . . . may not avail themselves of" the FLSA's maximum hours exemption set forth at 28 U.S.C. § 213(a)(15). 29 C.F.R. § 552.109(a).

RHD contends that Barnes' FLSA claim should be dismissed because he fails to allege that RHD and its providers are "engaged in commerce" under the FLSA. Def.'s Br. 5–6. The Court disagrees. The Complaint plainly alleges that RHD employs providers to perform "domestic service" for patients. 29 C.F.R. § 552.3; Compl. ¶¶ 2-6 (explaining that patients contract with and pay RHD to "provide care at their homes" and that RHD pays providers to administer medication, help clean the house, drive patients, and the like), ECF No. 1. "Domestic service," in turn, explicitly "affects commerce" under the FLSA and brings Barnes' claim within its ambit. 29 U.S.C. § 207(a)(1). The same allegations also suggest that patients pay RHD, which in turn pays providers, for "companionship services." 29 C.F.R. § 552.6; Compl. ¶¶ 4-5 (patients contract with RHD and pay RHD, not providers, for services), 6 (providers are responsible for "providing companionship to all patients"), 14 (Barnes "must help the patient in the bathroom during the nighttime hours"), ECF No. 1. Stated otherwise, the Complaint alleges that providers are employed by RHD and not the patients to whom they provide care. Accordingly, RHD—as a third-party employer of employees "engaged in companionship services"—may not avail itself of the FLSA's

6

maximum hours exemption and must pay its providers overtime. 29 C.F.R. § 552.109(a); *see also Tagaeva v. BNV Home Care Agency, Inc.*, No. 16CV6869RRMRLM, 2018 WL 1320661, at *1 (E.D.N.Y. Mar. 13, 2018) (under 29 C.F.R. § 552.109, "[h]ome health aides are entitled to the FLSA's . . . overtime compensation guarantees when they are employed by a third-party employer, rather than by the person to whom they provide their services."). RHD's Motion to Dismiss on the ground that Barnes' claims are not covered by the FLSA is therefore denied.[3]

### B. Barnes adequately alleges violations of the FLSA and the PMWA.

RHD also argues that Barnes fails to state a FLSA or PMWA claim because its sleep time deduction policy is permissible under both statutes. The Court agrees that the FLSA and PMWA both allow for automatic deductions. The Court disagrees, however, that Barnes has failed to state a claim for relief, and will therefore deny RHD's Motion on this ground.

As a general matter, employers are responsible for ensuring that employees are paid for all hours worked. 29 C.F.R. § 785.11 ("Work not requested but suffered or permitted is work time . . . . The employer knows or has reason to believe that he is continuing to work and the time is working time."); 29 C.F.R. § 785.13 ("[I]t is the duty of the

---

[3] Because Barnes' claims fall within the ambit of the FLSA, they are also covered by the PWMA. *See Bansept v. G&M Auto.*, 557 F. Supp. 3d 584, 590 (E.D. Pa. 2021) ("Because of the similarities between the PMWA and the FLSA, Pennsylvania courts analyze overtime and minimum wage violations of the PMWA and the FLSA under the same framework.").

management to exercise its control and see that [] work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them."). Under the FLSA, sleep is considered work if an employee is required to be on duty. 29 C.F.R. §§ 785.21, 22.[4] If an employee is required to be on duty for twenty-four hours or more, the employee and the employer may agree to automatically deduct sleep time from hours worked, so long as the employer provides "adequate sleeping facilities" and "the employee can usually enjoy an uninterrupted night's sleep." 21 C.F.R. § 785.22(a). If the employer and employee agree to exclude sleep time and that time gets "interrupted by a call to duty, the interruption must be counted as hours worked." 29 C.F.R. § 785.22(b). Furthermore, if the employee "cannot get at least [five] hours' of sleep" because of the interruption (or interruptions), "the entire scheduled [sleep time] is working time." *Id.*[5]

---

[4] "The Pennsylvania Department of Labor and Industry has indicated that, for purposes of the PMWA, it has generally followed the federal regulations, including § 785.22." *Galloway v. George Junior Republic*, No. CIV.A. 12-1399, 2013 WL 5307584, at *11 (W.D. Pa. Sept. 19, 2013). Pennsylvania courts have likewise "looked to the FLSA for guidance in applying the PWMA." *Id.* (citing *Cmwlth of Pa. Dep't of Labor & Indus., Bureau of Labor Law Compliance v. Stuber*, 822 A.2d 870, 873 (Pa. Commw. 2003), *aff'd mem.*, 580 Pa. 66, 859 A.2d 1253 (Pa. 2004). The Court will therefore analyze Barnes' FLSA and PWMA claims together.

[5] The parties agree that federal and Pennsylvania regulations permit sleep time arrangements and rely on these regulations in their briefs. *See* Def.'s Br. 2, ECF No. 9-1; Pl.'s Resp. 2, 4, ECF No. 11. The Court thus applies them to the case at bar, notwithstanding *Loper Bright*. *See Shannon v. Pleasant Valley Cmty. Living Arrangements, Inc.*, 82 F. Supp. 2d 426, 430 (W.D. Pa. 2000) (applying sleep time regulations where "no party seriously contend[ed] that the agency's interpretation does violence to the intent of Congress as expressed in the FLSA and [the court could] discern no such unfaithfulness to the legislative mandate.").

An automatic deduction policy does not, by itself, violate the FLSA. *See Bell v. Reading Hosp. & Med. Ctr.*, 2016 WL 3902938, at *9 (E.D. Pa. July 19, 2016) (collecting cases). However, an employer may "potentially run afoul of the FLSA" when he or she fails to (1) pay employees who work during or through automatically deducted breaks; and (2) "police and oversee" employees and their supervisors to ensure employees are paid when they do. *Fengler v. Crouse Health Found., Inc.*, 595 F. Supp. 2d 189, 195 (N.D.N.Y. 2009); *see also Camesi v. Univ. of Pittsburgh Med. Ctr.*, No. CIV.A. 09-85J, 2011 WL 6372873, at *4 (W.D. Pa. Dec. 20, 2011) ("Where an employer's formal policy is to compensate employees for all time worked, courts have generally required a showing that the employer's common or uniform practice was to not follow its formal, written policy . . . . There must be a showing that enforcement of the automatic deduction policy created a policy-to-violate-the-policy.") (quoting *White v. Baptist Mem. Health Care Corp.*, 2011 WL 1883959, *10 (W.D. Tenn. May 17, 2011)).

Although RHD's automatic sleep time deduction policy may be permissible, the Court finds that Barnes has nonetheless adequately pleaded a FLSA violation. Barnes alleges that (1) RHD's time-recording application does not allow providers to record sleep time interruptions;[6] (2) RHD failed to train providers and their managers as to what

---

[6] Drawing "all reasonable inferences in favor of" Barnes, the Court infers that Barnes himself has tried and failed to record sleep time interruptions on the application. *Wilson*, 57 F.4th at 140. Separately, Barnes concedes that providers can "individually alert [] management" outside of the application. Compl. ¶ 38, ECF No. 1. Further factual development is necessary to determine whether this means of reporting sleep time interruptions complies with the FLSA, PMWA, and applicable regulations.

9

constitutes uninterrupted sleep time; and (3) RHD did not require managers to monitor providers' sleep time. Compl. ¶¶ 21, 38, ECF No. 1. As a result, providers have gone unpaid for hours (and overtime) worked. Because Barnes states a plausible claim for relief under the FLSA, RHD's Motion to Dismiss on this ground is denied.[7]

### C. Barnes seeks recovery of overtime wages, not gap time wages.

RHD also contends that Barnes' collective and class action claims should be dismissed because they seek "gap time" wages that cannot be recovered under the FLSA or PMWA.[8] The Court finds that Barnes does not seek recovery of gap time wages, but

---

[7] RHD contends that Barnes' FLSA claim "falls short" because Barnes did not explicitly plead that RHD knew both that (1) providers were working during sleep time, and (2) providers failed to report these interruptions. Def.'s Br. 9, ECF No. 9-1. Notwithstanding the fact that RHD's argument rests entirely on an unpublished decision from the Ninth Circuit Court of Appeals, *Raczkowski v. TC Const. Co. Inc.*, No. 91-56536, 1993 WL 385483 (9th Cir. 1993), an employer's actual knowledge of unreported interruptions to automatically deducted breaks is not a required element of a FLSA claim. To the contrary: an employer who "knows *or has reason to believe* that [an employee] is continuing to work" through an automatically deducted break must compensate the employee accordingly. 29 C.F.R. § 785.11 (emphasis added). That Barnes and other providers may not have reported (and indeed, may not have been able to report) interruptions to sleep time does not necessarily discharge RHD of its duty to pay them. Even assuming RHD did not know that providers were working during sleep time, Barnes' allegations establish that RHD certainly had reason to believe they were, given the nature of providing "services to patients in need of full-time care[.]" Compl. ¶ 3, ECF No. 1; *see also id.* ¶¶ 4, 10-14 (explaining how a provider must remain in a patient's home and "is still responsible for the patient [and] required to care for the patient" during sleep time).

[8] The term "gap time" refers to "non-overtime hours worked for which an employee is not compensated." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 243 (3d Cir. 2014). Gap time is not covered by the FLSA's overtime provisions (because the hours do not exceed the forty-hour-per-week threshold), nor is it covered by the FLSA's minimum wage provisions (because the employee is still being paid a minimum wage when their weekly salary is averaged across all compensated and non-compensated hours worked). *See id.; see also Rosario v. First Student Mgmt. LLC*, No. CV 15-6478, 2016 WL 4367019, at *4 (E.D. Pa. Aug. 16, 2016) (explaining gap time claim by way of example). Claims for gap time are not cognizable under the FLSA or PMWA. *See Davis*, 765 F.3d at 243; *see also*

10

rather, overtime wages. *See* Compl. ¶¶ 53, 56, 58-59, 66-67, 70, ECF No. 1. The Complaint alleges that an RHD provider is "typically" scheduled to work three or four twenty-four-hour shifts per week. *Id.* ¶ 35. In any given twenty-four-hour shift, a provider is paid for seventeen hours, while the other seven hours go unpaid as sleep time. *Id.* During a week where a provider is scheduled to work three twenty-four-hour shifts, a provider works fifty-one paid hours and twenty-one unpaid sleep time hours—well in excess of the FLSA's forty-hour limit. Accordingly, any additional time worked would qualify as overtime that should be paid at a rate of time-and-a-half. RHD's Motion to Dismiss the collective and class claims on the grounds that they seek gap time wages is therefore denied.[9]

### D. At this early phase of the case, Barnes' class and collective definitions suffice.

RHD also seeks dismissal of the class and collective claims on the grounds that Barnes' proposed class and collective are "ill-defined." Def.'s Reply 10, ECF No. 15; *see*

---

*Ford-Greene v. NHS, Inc.*, 106 F. Supp. 3d 590, 611-13 (E.D. Pa. 2015) (first dismissing FLSA claim as an impermissible claim for gap time, then dismissing PMWA claim "for the same reasons").

[9] RHD also argues that Barnes' claims should be dismissed to the extent they seek to recover wages for "overtime gap time." Unlike an employee who seeks "gap time" pay, an employee seeking "overtime gap time pay" alleges (1) they worked more than 40 hours in a work week; (2) they were not paid for overtime work (work in excess of 40 hours); *and* (3) they were also not paid for "straight time work" (work up to 40 hours). *Rosario* 2016 WL 4367019, at *4. Neither the Supreme Court nor the Court of Appeals for the Third Circuit has addressed whether overtime gap time claims are cognizable under the FLSA. The Court need not and declines to do so at this early phase of the case, as it is unclear whether Barnes seeks recovery of unpaid "overtime gap time" wages as RHD contends.

*also* Def.'s Br. 11-12 (arguing that the collective definition is "overly broad" and the class definition is "no[t] aligned" with "the circumstances under which Plaintiff alleges he was not properly paid), ECF No. 9-1. The Court disagrees.  Dismissing Barnes' collective and class action claims before discovery and before Barnes has sought class or collective certification would be "premature." *Goode v. LexisNexis Risk & Info. Analytics Group, Inc.*, 284 F.R.D. 238, 244 (E.D. Pa. 2012).

### IV.   CONCLUSION

For the foregoing reasons, Defendant RHD's Motion to Dismiss is denied.